**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Bryan Gans,<br>Plaintiff,<br>v.<br>Commissioner of Social Security Administration,<br>Defendant. | No. CV-26-00549-PHX-JJT<br>**ORDER** |

At issue is the denial of Plaintiff Bryan Gans's Application for Social Security Income (SSI) and Disability Insurance Benefits (DIB) by the Social Security Administration (SSA) under the Social Security Act (the Act). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of the denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 9, Pl. Br.), Defendant Social Security Administration Commissioner's Responsive Brief (Doc. 11, Resp.), and Plaintiff's Reply (Doc. 12, Reply). The Court has reviewed the briefs and Administrative Record (Doc. 8, R.) and now affirms the Administrative Law Judge's (ALJ) decision (R. at 1369–95).

## I. BACKGROUND

Plaintiff initially protectively applied for SSI and DIB on September 17, 2019 alleging a disability with an onset date of July 22, 2018. (R. at 1425.) After hearing, on September 29, 2021, both applications were denied, and upheld by the Appeals Council. (R. at 1422–58.) On appeal to the District Court, Judge Brnovich reversed and remanded, on grounds that the ALJ failed to explain the reason for discrediting Plaintiff's symptom

testimony. (R. at 1462–67.) Upon rehearing and reconsideration, the ALJ issued a decision on October 23, 2025 again denying the application. (R. at 1369–95.) Plaintiff did not appeal to the Appeals Council, and the ALJ's decision became final on December 23, 2025. (R. at 1370.) Plaintiff now appeals the denial of both SSI and DIB benefits. (Pl. Br. at 1.)

The Court has reviewed the medical evidence and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. In short, upon reconsidering the record, the ALJ found that Plaintiff had the following severe medically determinable impairments: lumbar degenerative disc disease status post fusion and chronic pedicular fracture. (R. at 1375.) The ALJ further determined that the impairments did not meet or medically equal the severity required to consider him disabled (R. at 1377–78), that Plaintiff's residual functional capacity (RFC) was sufficient to perform light work (R. at 1378–84), and that there were jobs in the national economy that Plaintiff could perform (R. at 1384–85).

## II. LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 416.920(a)(4); 20 C.F.R. § 404.1520(a).[1] The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner on the fifth. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step one, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 416.920(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers if the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 416.920(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

## III. ANALYSIS

Plaintiff raises two arguments for the Court's consideration: (1) the ALJ erred in rejecting the 2021 assessment of Dr. Singh without sufficient explanation of the supportability and consistency factors; and (2) the ALJ erred in discounting Plaintiff's symptom testimony. (Pl. Br. at 1.) In view of these errors, Plaintiff asks the Court to apply the credit-as-true rule and to remand for a calculation of benefits. (Pl. Br. at 25.) For the reasons set forth below, the Court disagrees with Plaintiff.

---

[1] Generally, courts treat similarly these twin regulations. Therefore, caselaw applying one regulation may be cited herein in the context of the other regulation, unless noted otherwise.

**a. The ALJ did not err in rejecting Dr. Singh's 2021 assessment.**

When reviewing medical opinions and prior administrative findings, an ALJ is directed to consider a list of five factors as enumerated in 20 C.F.R. § 416.920c(c)(1)–(5). Of the factors, supportability and consistency are the "most important." 20 C.F.R. § 416.920c(a). Supportability requires an ALJ to weigh the objectivity and relevance of an opinion, whereas consistency instructs an ALJ to consider whether the opinion accords with other medical and nonmedical opinions. 20 C.F.R. § 416.920c(c)(1)–(2). "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were support by substantial reasoning." *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015).

Here, Plaintiff contends the ALJ erred in rejecting Dr. Singh's 2021 assessment on three bases: (1) the ALJ only cited records during the period after Plaintiff's spinal fusion surgery, a period in which his pain greatly subsided (Pl. Br. at 14–17); (2) the ALJ improperly incorporated prior findings with the phrase "[as] referenced above," a turn of phrase leaving Plaintiff and the Court with the burden of sifting through records to decode the ALJ's reasoning (Pl. Br. at 17–18); (3) that the medical opinions on which the ALJ relied were incomplete, having been issued without the benefit of later records (Pl. Br. at 18–19).

Plaintiff's first argument, regarding the exclusive citation to records dating back to the period immediately after Plaintiff's successful surgery, suffers two defects. (Pl. Br. 14–17.) First, contrary to Plaintiff's contention, the ALJ cited several years' records contradicting Dr. Singh's 2021 assessment, including at least 2020–22 and 2024–25. (R. at 1383 (citing 914–18; 22F/30–34); R. at 1384 (citing 1761-63; 33F/31–33); R. at 1381 (citing 1759–63; 33F/29–33); R. at 1381 (citing 1837–40; 33F/4–7); R. at 1381 (citing 2002–14; 39F/1–13).)[2] In each record, the ALJ found evidence showing that Plaintiff was

[2] Several of these citations to the record derive from portions of the RFC determination discussing Plaintiff's ailments generally, not specifically in relation to Dr. Singh's opinion. An ALJ need not reiterate in every paragraph its findings in order to incorporate pre- or succeeding findings. *Cf. Baker v. Comm'r of Soc. Sec. Admin.*, 2022 WL 2914369, at *3 (D. Ariz. July 25, 2022) ("the ALJ need not discuss all their reasoning at each step in the five-step test and may incorporate reasoning from other steps by reference").

not as impaired as Dr. Singh opined. Second, Plaintiff cites cases that prohibit 'cherry-picking' in mental health treatment cases, not physical health treatment cases like the present one. The distinction is important because mental health issues, in particular, "wax and wane in the course of treatment." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). An individual suffering from mental health issues may present as perfectly fine one day, yet struggle deeply the next, rendering treatment notes from a given Wednesday inapplicable to the following Thursday. Contrast that with an individual suffering from physical health issues, who may experience difficulties more consistently across weeks, even if the severity of a given symptom surges on a particular day. As a result here, even had the ALJ cherry-picked records, the Court finds diminished the particular risk of cherry-picking. Furthermore, the Court notes that cherry-picking allegations, like the instant ones, are exposed to the reasonable retort that an ALJ's very job is to weigh sometimes conflicting evidence. By necessity then, an ALJ's findings will reject some evidence and accept others. The Court, on appeal, is directed to defer to such findings "[w]here the evidence is susceptible to more than one rational interpretation . . . ." *Thomas*, 278 F.3d at 954. In short, just as an ALJ may not cherry-pick, neither may the court. In this case, the Court therefore finds substantial evidence supporting the ALJ's conclusion.

Plaintiff's second argument is that the ALJ improperly incorporated prior findings with the phrase "[as] referenced above," requiring Plaintiff and the Court to sieve the decision in search of evidence supporting the ALJ's reasoning. (Pl. Br. at 17–18.) But the decision is not hard to parse. As implied by the Court's preceding discussion of the evidence, the ALJ's use of the challenged phrase provides sufficient guidance to review the record. Plaintiff's cited caselaw is unpersuasive, supporting only the proposition that conclusory incorporative references are proscribed, not all incorporative references. *See, e.g.,* Pl. Br. at 18 (citing *Ibrahim v. Comm'r of Soc. Sec. Admin.*, 2024 WL 4487113, at *4 (D. Ariz. July 22, 2024) (finding the ALJ's "conclusory reference . . . leaves the Court to sift through numerous examination findings")). Here, the ALJ's reference was transitory, lodged as part of a broader discussion of Dr. Singh's opinion, "[h]owever, the part of the

opinion [found unpersuasive] is not only inconsistent with the other physical exam findings referenced above, but also not consistent with Dr. Singh's own physical exam findings showing normal lumbar range of motion, no tenderness to palpation, negative straight leg raise testing, and full 5/5 strength throughout with intact sensation and a normal gait." (R. at 1383.) The sentence both qualifies the reference, by specifically limiting it to "other" physical exam findings, and acknowledges additional findings beyond the reference, by providing alternative specific explanations for why the opinion was inconsistent. (R. at 1383.) The Court therefore finds the ALJ did not improperly use the phrase 'as referenced above.'

Third, Plaintiff attacks the decision on grounds that the ALJ relied on two medical opinions that issued before later records were gathered. (Pl. Br. 18–19.) The argument is unavailing. The Court is not aware of, nor does Plaintiff cite to, any regulation or case requiring an ALJ to disregard medical opinions which do not contemplate "later medical records." (Pl. Br. at 19.) Furthermore, as the Commissioner suggests, just as "there is always some time lapse between a consultant's report and the ALJ hearing and decision," some time may lapse between a medical opinion and later medical evidence. Resp. at 16; *cf. Owen v. Saul*, 808 F. App'x 421, 423 (9th Cir. 2020). That time lapse does not relegate such opinions to irrelevance, and "the Social Security regulations impose no limit on such a gap in time." *Owen*, 808 F. App'x at 423. Therefore, the ALJ was permitted to rely on the two agency medical opinions in reaching her conclusion.

**b. The ALJ did not err in discounting Plaintiff's symptom testimony.**

An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison*, 759 F.3d at 1014. First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Liegenfelter*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)). If the claimant presents such evidence then "the ALJ can reject the claimant's testimony about the severity of her symptoms only

by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). This is the most demanding standard in Social Security cases. *Id*. at 1015. "In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). But the ALJ may properly consider that the medical record lacks evidence to support certain symptom testimony. *Id.* at 681. The ALJ may also properly consider inconsistencies in the claimant's testimony, including inconsistencies between the claimant's testimony of daily activities and symptom testimony. *Id.*

Here, Plaintiff asserts the ALJ failed to articulate clear, specific, and convincing reasons for discrediting Plaintiff's symptom testimony when she offered the following five justifications: (1) the "totality of the evidence" weighed against Plaintiff's testimony (Pl. Br. at 20–21); (2) the "physical exam findings" ran contrary to his testimony (Pl. Br. at 21–22); (3) Plaintiff's "generally conservative treatment" suggested he exaggerated symptoms (Pl. Br. at 22–23); (4) Plaintiff's use of the cane was deemed medically unnecessary, thereby casting doubt on his credibility (Pl. Br. at 23–24); and (5) Plaintiff's daily life activities suggested a high RFC (Pl. Br. at 24–25).

Before analyzing Plaintiff's arguments, the Court finds it helpful to reiterate that the "specific, clear and convincing" review standard applied to the rejection of symptom testimony in the Ninth Circuit is best understood sequentially. *Garrison*, 759 F.3d at 1014–15 ("the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so"). First, the district court must ask: is the reasoning clear (*i.e.*, intelligible)? If not, the court must remand because an unintelligible decision forecloses meaningful appellate review and courts are barred from independent factfinding. Second, if clear, is the reasoning specific? If not, the court must remand because conclusory findings likewise foreclose meaningful review. And

third, if clear and specific, is the reasoning convincing (*i.e.*, supported by "substantial evidence")? *Orn*, 495 F.3d at 630. If not, the court must remand because the ALJ erroneously weighed the evidence. Reframing the standard like so permits courts to examine arguments as distinct analytical concepts, rather than permitting them to blur together.

Here, Plaintiff's attack on the phrase, the "totality of the evidence," challenges the decision's specificity and clarity, while the remaining four arguments challenge the decision as unconvincing. (Pl. Br. at 20–25.) Beginning with clarity and specificity, the Court rebuffs Plaintiff's attack. In the Court's reading, the ALJ used the phrase "totality of the evidence" in preview, not in conclusion. Hence, the ALJ followed it with a summary of her conclusions and her several reasons for discounting Plaintiff's testimony. While Plaintiff is correct that "providing a summary of medical evidence in support of a residual functional capacity finding is not the same as providing clear and convincing reasons," here the ALJ did not rest on the medical summary as the basis for finding the testimony not credible. *Leavell v. Comm'r of Soc. Sec. Admin.*, 2019 WL 6873136, at *5 (D. Ariz. Dec. 17, 2019). The ALJ discounted the testimony for several reasons, including *inter alia* by reference to the "physical exam findings," Plaintiff's "generally conservative treatment," and his specific daily life activities, such as his participation in the "'gig economy' looking for small jobs on his smart phone . . . involving assembling furniture and hanging televisions." (R. at 1381.) Indeed, Plaintiff impliedly concedes that the ALJ provided clear and specific reasons because Plaintiff's subsequent arguments then assail those very reasons. Therefore, the Court rejects Plaintiff's assertion that the decision is unclear or unspecific.

The Court likewise does not agree with Plaintiff about the ALJ's weighing of the evidence. Plaintiff's first contention on this front, about the physical exam findings, is again that cherry-picking occurred, and that even with the cherry-picked records, no evidence sufficiently undermined Plaintiff's chronic pain testimony. (Pl. Br. at 21–22.) The Court narrowly disagrees. The ALJ does not appear to have cited the physical exam records

as to the question of *pain*, but instead as to the "limited *effects* of [Plaintiff's] symptoms." (R. at 1381 (emphasis added).) As the ALJ noted, the physical exams established that "physical exam findings in 2024 were generally within normal limits . . . . the medical provider noted that physical exam findings were consistent with possible [] radiculopathy . . . . [h]owever, he continued to have normal sensation . . . in the lower extremities." (R. at 1381.) The determination was also supported by later records, "[f]ollow up appointments in February and April 2025 showed no significant changes." (R. at 1381.) And though Plaintiff may believe the ALJ cherry-picked the findings, as discussed *supra*, his cited cases express concerns about cherry-picking mental health records, an issue absent here. Thus, despite the presence of some medical records undoubtedly supporting Plaintiff's interpretation of the overall record, the Court is bound to defer to the ALJ's reasonable determination. *Thomas*, 278 F.3d at 954.

Plaintiff next argues against the ALJ's categorization of Plaintiff's treatment as "conservative." (Pl. Br. at 22–23.) Plaintiff points out he had "multiple courses of physical therapy, multiple rounds of injections, radiofrequency ablations, a lumbar fusion surgery, and took multiple medications for pain throughout the relevant period." (Pl. Br. at 22–23.) The Commissioner responds by arguing that the vast majority of such treatment occurred "after his June 2020 surgery, indicating some level of sustained improvement" and that Plaintiff's briefing is entirely silent as to pain between "November 2022 to April 2024." (Resp. at 8–9.) The Court agrees with Plaintiff. Though an ALJ is typically better placed to determine whether a course of treatment is conservative, this Court finds that fusion surgeries, injections, radiofrequency ablations, and physical therapy is not a 'conservative' course of treatment. (R. at 1381.) In response to the Commissioner's trailing argument, consider that even if Plaintiff's symptoms did improve within the highlighted 16-month window, Plaintiff alleged a disability between 2018 and the present, so an improvement across the window, while notable, is not dispositive. Nonetheless, though the Court agrees with Plaintiff on this argument, the inquiry must continue because "even if the ALJ erred by describing [Plaintiff]'s treatment as conservative," the ALJ may still have offered "other

clear and convincing reasons for discounting [Plaintiff]'s testimony . . . ." *Fry v. Berryhill*, 749 F. App'x 659, 661 (9th Cir. 2019).

Plaintiff's penultimate argument regards his cane usage. (Pl. Br. 23–24.) Plaintiff asserts that the ALJ cast doubt on Plaintiff's credibility because he "testified to using a cane a couple times per week" even though "the medical evidence does not show that this is medically necessary . . . ." (R. at 1381.) This finding, Plaintiff argues, is improper based on the reasoning in *Parker*, where the Seventh Circuit found it "absurd[]" that the ALJ "thought it suspicious that the plaintiff uses a cane, when no physician had prescribed [it, because] a cane does not require a prescription . . . ." *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010). The argument misses the point. The ALJ did not cast suspicion on Plaintiff's cane usage because it was absent prescription, the ALJ cast suspicion on the cane usage because it was not "medically necessary." (R. at 1381.) Consider a hypothetical individual who dons a neck brace for a suit about a car accident *sans* a single doctor deeming the brace necessary, suspicion may reasonably follow. Here, Plaintiff treated with various doctors for years, yet no doctor thought it medically necessary, nor does Plaintiff allege otherwise. The Court accepts that Plaintiff finds it helpful, Plaintiff testified inasmuch, but an ALJ is directed by regulation to review "[o]bjective medical evidence . . . to assist [] in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work." 20 C.F.R. § 404.1529(c)(2). The ALJ can hardly be faulted for doing that here. The Court therefore declines to disrupt the ALJ's reasonable finding regarding the cane usage.

Finally, Plaintiff argues the ALJ erred in determining his daily life activities suggested a high RFC. (Pl. Br. at 24–25.) Daily life activities may discredit a symptom testimony where an ALJ determines a claimant is able to "spend a substantial part of [his] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting . . . ." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). Here, Plaintiff's brief attempts to minimize his life daily activities, writing that such activities were limited to "looking for and completing small jobs in his neighborhood." (Pl

Br. at 24 (citing R. at 1381).) The Commissioner responds that "[e]ven if Plaintiff's activities were not consistent with full-time work, the salient point is that they were inconsistent with the severity of the symptoms alleged." (Resp. at 9.) Though a close call, the Court sides with the Commissioner. As noted by the ALJ, Plaintiff testified at the hearing to undertaking a substantial set of daily activities. He picks up "handyman gig jobs" through a mobile app, consisting of "assembling small furniture items or hanging TVs" (R. at 1403), requiring him to lift boxes weighing approximately 20-25 pounds (R. at 1412), and even to wear knee pads when "work[ing] on the floor stuff." (R. at 1405.) He works these jobs a few times a week, and when not working, is "always piddling with things around [the] house and trying techniques and working on drawings and paintings" (R. at 1409) or organizing his storage unit (R. at 1408). Plaintiff also testified he had no problems getting in and out of the shower, and only manageable problems grocery shopping. (R. at 1409–10.) Although these activities do not suggest an active lifestyle, they do support, as the ALJ noted, the determination of an RFC sufficient to perform light work. The ALJ thus fairly relied on such activities to assess Plaintiff's symptom testimony.

The Court recognizes that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The Court is also sensitive to the notion that some individuals, perhaps especially men, are reticent to confess pain to a stranger at a hearing. Yet, "[i]t is not the court's role to 'second-guess' an ALJ's reasonable interpretation of a claimant's testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 500 (9th Cir. 2022) (citing *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001)). The Court therefore must defer to the ALJ's reasonable interpretation of Plaintiff's testimony.

Because the Court affirms the ALJ's decision, the Court need not address the credit-as-true rule argument.

**IT IS THEREFORE ORDERED** affirming the October 23, 2025 decision of the Administrative Law Judge. (R. at 1369–95.)

. . .

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 13th day of October, 2026.

Honorable John J. Tuchi
United States District Judge